UNITED STATES BANKRUPTCY COURT
FOR THE EASTERN DISTRICT OF MICHIGAN

IN RE:  
John E. Fogler and Shari L. Fogler,  
            Debtors.  
_____/

Case No. 20-42254-tjt  
Chapter l2  
Judge: Thomas J. Tucker

## PLAN OF REORGANIZATION

John E. Fogler and Shari L. Fogler, Debtors in Possession herein, propose the following Plan of Reorganization pursuant to ll U.S.C. l22l of the U.S. Bankruptcy Code.

### ARTICLE I. - DEFINITIONS

**Debtors in Possession**: John E. Fogler and Shari L. Fogler.

**Chapter l2**: Chapter l2 of the U.S. Bankruptcy Code, ll U.S.C. l20l et seq.

**Reorganization:** The case for reorganization of the Debtors commenced by voluntary petition under Chapter l2 of the Bankruptcy Code.

**Plan**: This Plan of Reorganization.

**Confirmation of Plan**: The entry by this Court of an Order Confirming Plan in accordance with Chapter l2.

**Effective Date**: Thirty days after the date on which the Order Confirming Plan becomes final and non-appealable.

**Court**: The United States Bankruptcy Court for the Eastern District of Michigan, which has jurisdiction in this case.

**Bankruptcy Code**: ll U.S.C. l0l, et seq, l978.

**Priority Claim:** Claim of general creditor that is entitled to priority in payment under Section 507 of the Bankruptcy Code, including, but not limited to, professional fees as defined herein.

**Professional Fees:** Any fee and/or costs allowed by the Court as an expense of administration under Section 503(d) of the Code, payable to any person appointed by this Court.

**Term of the Plan**: 36 months from the date the Plan becomes effective**.**

1

**Allowed Claim**: A claim which has been timely filed with the Bankruptcy Court and to which no objection to the allowance thereof has been filed and sustained by order of the Bankruptcy Court and which is no longer subject to appeal.

**Claim**:

  (a) A right to payment, whether or not such right is reduced to judgment, liquidated, unliquidated, fixed, contingent, matured, unmatured, disputed, undisputed, legal, equitable, secured or unsecured, which such right arose or accrued prior to the confirmation date; or,

  (b) A right to an equitable remedy for breach of performance if such breach gives rise to a right to payment, whether or not such right to an equitable remedy is reduced to judgment, fixed, contingent, matured, unmatured, disputed, undisputed, where such right arose or accrued prior to the confirmation date; or,

  (c) A claim arising under Section 502(g) of the Bankruptcy code.

**Contingent Claim**: Any claim arising prior to the bankruptcy being filed or during the course of the Chapter l2, as to which the amount of said claim is unknown and/or has not been determined by the Court.

**Disputed Claim**: All claims of unsecured creditors unless verified by a Proof of Claim duly filed with the Clerk of the Court or those listed as a "Disputed Claim" by the Debtors.

**Trade Creditor**: A creditor of the Debtors, holding a general unsecured claim which claim arose from the creditor advancing funds for the operation of the Debtors' business, pre-petition.

**Deficiency Claim**: An unsecured claim against the Debtors which amounts to the difference between the value of the secured creditor's collateral, as determined by the Court or per agreement of the parties, and the amount of the secured creditor's total claim as filed and allowed by the Court.

2

## ARTICLE II. - SUBMISSION OF ALL FUTURE EARNINGS

The Debtors will submit all of their future earnings and income after deduction of business and living expenses, on a monthly basis, to the supervision and control of the Trustee, in accordance with the terms of this Plan, but not sooner than 30 days after the confirmation of the Plan.

## ARTICLE III.- EXECUTORY CONTRACTS

The Debtors assume all executory contracts, unless said contracts have been specifically rejected as part of this Plan. Debtors specifically assume and reaffirm all government program contracts.

## ARTICLE IV. - EXECUTION AND IMPLEMENTATION OF PLAN

The Debtors, John E. Fogler and Shari L. Fogler, shall be responsible for the continuation of the Debtors' farming business. They agree to submit all their future earnings and income as in accordance with the terms of this Plan to the supervision and control of the Trustee, after deduction for business and living expenses. Payments will be made on a regular basis as stated in the Plan hereafter.

## ARTICLE V. - CLAIMS

The holder of any actual or potential claim who has had actual or constructive notice of these Chapter l2 proceedings shall timely file a claim with the Clerk of the Court. If said creditors file their claims within said period of time, Debtors shall have 30 days from that date to file a written objection to said claim and/or claims.

In the event that the Court nonetheless allows said claim that claim shall be treated as a part of the class to which it would ordinarily belong.

## ARTICLE VI. - MODIFICATION OF PLAN

The Debtors may amend or modify this Plan any time prior to the confirmation without leave of the Court. The Debtors may propose amendments and/or modifications of this Plan at any time subsequent to confirmation with leave of the Court and upon notice to the Creditors. After confirmation of this Plan, the Debtors may without approval of the Court, so long as it does not materially or adversely affect the interests of the creditors, remedy any defect or omission, or reconcile any inconsistencies of the Plan, or in the Order of Confirmation, if any may be necessary to carry out the purposes and effects of this Plan.

## ARTICLE VII. RELEASE OF CROP LIEN

In order to facilitate the continuation of the Debtors' business and to carry out the within Plan of Reorganization, except to the extent that there has already been a payment to the creditor or the lien already attached pre-petition, there shall be a release of any and all pre-petition crop liens filed by any creditor whose claim is listed and dealt with in this Plan of Reorganization. The crop lien release shall apply to any and all crops planted after the filing of the petition herein pursuant to section 552(a) of the Bankruptcy Code. Such UCC crop lien release of any and all crop liens shall be filed by the creditor in the appropriate county or state filing authority in which such crop lien was previously filed. If such release is not filed within sixty (60) days from the entry of a final, non-appealable order of confirmation of this Plan, the Debtors may file a certified, true copy of this Plan or the Order of Confirmation in lieu of such release and with the full force and effect of such release.

## ARTICLE VIII. - JURISDICTION OF THE COURT

The Court will retain jurisdiction until this Plan has been fully consummated for, including, but not limited to, the following purposes:

(l) The classification of the claim of any creditor and the re-examination of claims which have been allowed, and for the determination of such objection as may be filed to the creditor's claim.

(2) To estimate any contingent claims pursuant to Section 502(c)(l) upon request of any holder of a contingent or unliquidated claim, and to make a determination on any objection to said claim.

(3) Determination of all questions and disputes regarding title to the assets of the estate, and determination of all causes of action, controversies, disputes or conflicts, whether or not subject to action pending as of the date of confirmation, between the Debtors and any other party, including, but not limited to, any right of the Debtors to recover assets, pursuant to the provisions of Title ll of the United States Code.

(4) The correction of any defect, the curing of any omission, or the reconciliation of any inconsistencies to this Plan, or the Order of Confirmation, as may be necessary to carry out the purposes and intent of this Plan.

(5) The modification of this Plan after confirmation, pursuant to the Bankruptcy Rules and Title ll of the United States Code.

(6) To enforce and interpret the terms and conditions of this Plan.

(7) The entry of any order, including injunctions, necessary to enforce the title, rights and powers of the Debtors, and to impose such limitations, restrictions, terms and conditions of such title, rights and powers as this Court may deem necessary.

(8) Entry of an Order concluding and terminating this case.

## ARTICLE IX. - MISCELLANEOUS PROVISIONS

If the invalidity of any provision of this Plan precludes confirmation, the Debtors will be allowed the right to modify this Plan and have it confirmed, as modified.

## ARTICLE X. - TRUSTEE PAYMENT

The Chapter 12 Trustee, David J. Hutchinson who will be administering this Plan, shall receive such percentage of all plan payments as the U.S. Trustee deems appropriate as received from the

Debtors pursuant to this Plan. Such fee shall be for the Trustee's office overhead and the Trustee fee and shall be received at least annually by the Trustee.

## ARTICLE XI. - CROP INSURANCE

The Debtors shall attempt to obtain crop insurance on any cash crops which they plant but shall not be responsible for crop insurance on any hay acreage as crop insurance is not available for hay.

## ARTICLE XII. - FARM PROGRAMS

The Debtors shall be and are hereby authorized to participate in and hereby assume all farm service programs, including, but not limited to all programs of the United States Department of Agriculture, Farm Service Agency (FSA). All liens against post petition farm service program payments by any creditor are released pursuant to section 552(a) of the Bankruptcy Code.

## ARTICLE XIII. - ASSETS & LIABILITIES

### *ASSETS*

Real Property:

The real property of the Debtors consists of their home located in Leonard, Michigan, valued at $200,000.00. The Debtor, John E. Fogler, is also a joint tenant on his mother's home, for estate planning purposes, located in Rochester, Michigan which is valued at $150,000.00 and which has a mortgage lien in the amount of $101,833.92 as of the date of the filing of this proceeding.

Personal Property:

| | |
|---|---:|
| Farm Equipment | $306,900.00 |
| Farm Vehicles (Tri Cty liens) | 46,750.00 |
| Vehicles (Security C.U.) | 6,000.00 |
| Personal Vehicles | 2,500.00 |
| Semi Trailers (Fin. Pac) | 20,000.00 |
| Crops on hand or growing | 20,000.00 |
| Miscellaneous personal property | 14,239.32 |
| John's half interest in his mother's home | 24,083.00 |
| Total Personal Property Assets: | $440,472.32 |

## LIABILITIES

| | |
|---|---:|
| Administrative claim (approx.) | $12,000.00 |
| Priority claims: IRS | 14,696.00 |
|     State of Michigan | 1,738.00 |
| Secured claims | |
|   USDA/FSA - Rural Development | 207,631.00 |
|   Tri County Bank | 513,833.00 |
|   Financial Pacific | 27,562.00 |
|   Security Credit Union | 1,100.00 |
|   Flagstar Bank - (Home Mtg) | 152,689.00 |
| Total Unsecured | <u>381,234.00</u> |
| Total Liabilities: | $1,312,483.00 |

## ARTICLE XIV. - LIQUIDATION ANALYSIS

### Assets

| | |
|---|---:|
| Real property | 200,000.00 |
| Real Property - 1/2 equity in mother's home | 24,083.04 |
| Personal property | <u>440,472.32</u> |
| **Total assets** | **$ 664,555.36** |

### Liabilities

| | |
|---|---:|
| Administrative Claims | 12,000.00 |
| Priority Claims | 16,434.00 |
| Secured Claims | 902,815.00 |
| Unsecured Claims | <u>381,234.00</u> |
| **Total Liabilities:** | **$1,312,483.00** |

**Assets - Liabilities: $664,555.00 - 1,312,483.00 = - $647,928.00**

## LIQUIDATION ANALYSIS

| Asset | Value | Debt | Exemption | Equity |
|---|---:|---:|---:|---:|
| Home | $200,000.00 | 190,814.00 | 11,245.38 | -0- |
| Farm Equipment | 306,900.00 | 721,833.00 | -0- | -0- |
| Farm Vehicles | 46,750.00 | 513,833.00 | -0- | -0- |
| Vehicles | 6,000.00 | 1,100.00 | 4,900.00 | -0- |
| Personal Vehicles | 2,500.00 | -0- | 2,500.00 | -0- |
| Semi Trailers | 20,000.00 | 27,562.00 | -0- | -0- |
| Crops in the ground | 20,000.00 | 721,833.00 | -0- | -0- |
| ½ Mother's home | 75,000.00 | 50,916.96 | 10,575.00 | 13,508.04 |
| Misc personal prop | 14,239.32 | -0- | 14,239.32 | -0- |

**Total Unsecured, Un-Exempt assets = $13,508.04**

# ARTICLE XV. - CLASSIFICATION AND TREATMENT OF CLAIMS AND INTEREST

**Class No. l:** Class l shall consist of attorney fees due and owing plus any additional fees which might result from these proceedings and which fee shall be paid from the first monies received pursuant to the terms of this Plan of Reorganization.

**Class No.2:** Class 2 shall consist of the Internal Revenue Service (IRS) which has filed its priority claim of $14,695.59 and its unsecured claim of $4,059.45. The priority claim of the IRS shall be paid over the term of this Plan at the rate of 4.0% per annum with annual payments beginning with the proceeds from the 2020 crop season receipts.

**Class No. 3:** Class 3 shall consist of the USDA, Farm Service Agency (FSA), Farm Loan Program which consists of the two (2) FSA loans in the total amount of approximately $208,000 which have an interest at the rate of 2.25% per annum and are fully secured by a first (1st) lien on certain pieces of the Debtors' farm equipment. The FSA shall retain its liens and the FSA shall be paid in full, with interest at the contract rate over a 15 year period with annual payments from their crop sale proceeds over such term beginning with their crop proceeds in the 2020 crop season. The Debtors understand and believe, based on the filed Claims that the FSA has a first (1st) lien on certain pieces of the Debtors' equipment which have a total value in excess of the FSA's total claim amount and a second (2nd) lien on the remainder of the Debtors' equipment.

**Class No. 4:** Class 4 consists of Flagstar Bank which has the first mortgage lien on the Debtors' home. Flagstar Bank shall retain its first (1st) mortgage lien on the Debtors' home. The secured debt owed to Flagstar Bank shall be repaid over a new amortization period of thirty (30) years at the current contract rate of 4.875% per annum with monthly payments of $826.00 based on the current amount due. The Debtors shall make these payments directly to Flagstar Bank and the Debtors shall also include a monthly Escrow payment for their real property taxes which can vary over the years and which is currently set at $343.03 per month. Any arrearages that exist at the time

of Confirmation shall be included in the total amount due to Flagstar Bank and included in the calculation of the new monthly payment.

**Class No. 5:** Class 5 consists of Financial Pacific Leasing, Inc. which has a lien on two (2) -1998 Dump Trailers used in the Debtors' trucking business. The trailers are titled in the name of John Fogler Farms, LLC (hereinafter referred to as the LLC) and the debt is also owed by the LLC. The liens of Financial Pacific Leasing, Inc. shall be retained and since the LLC is not the debtor herein, the debt in this Class shall not be re-amortized and payments will be made directly to Financial Pacific Leasing, Inc. The Dump Trailers are critical to the Debtors' trucking business and the Debtors shall continue to make the regular payments required by the financing agreement. Any arrearages shall be cured over the term of this Plan.

**Class 6:** shall consist of Tri-County Bank which has 1.) a second (2nd) lien on the Debtors' home; 2.) a second (2nd) lien on certain pieces of the Debtors' Farm Equipment and a first (1st) lien on other pieces of farm equipment upon which the FSA has a second (2nd) lien; 3.) a first (1st) lien on certain vehicles and 4.) a Crop lien on the value of the planted wheat as of the date of filing of this bankruptcy petition. Tri-County Bank shall retain its liens with the exception that the Crop lien shall be extinguished and removed pursuant to Article VII herein. The debt/Claim of the Tri-County Bank shall be divided into 3 sub-classes which shall become Classes 6A, 6B and 6C.

**Class 6A:** shall consist of Tri-County Bank's second lien on the Debtors' home. The 2nd lien of Tri-County Bank shall be retained and shall be repaid over a fifteen (15) year period at the rate of 4.25% per annum. Any arrearages which have accrued at the time of Confirmation of this Plan shall be included in the amount re-financed. These second mortgage lien payments shall be made directly to Tri-County Bank by the Debtors.

**Class 6B:** shall consist of Tri-County Bank's secured claim/portion of its total claim. The Tri-County Bank shall retain its 1st lien on certain pieces of the Debtors' equipment and a 2nd lien on the Debtors' Farm Equipment upon which the FSA has a 1st lien. Tri-County Bank shall also retain its 1st lien on 7 of the Debtors' vehicles upon which Tri-County Bank shows as Secured party

on the titles. The secured claim of Tri-County Bank amount shall be determined by subtracting the FSA's 1st lien amount of $208,000.00 on the Debtors' total Farm Equipment which has a value of $306,900.00 (306,900.00 - 208,000.00) for a value of $98,900.00. The value of the 7 vehicles upon which Tri-County Bank has a lien totals $46,750.00 and the value of the Debtors' wheat in the ground at the time of filing was $20,000.00. The amount of Tri-County Bank's secured claim shall be ($98,900.00 + 46,750.00 + 20,000.00) $165,650.00. The secured claim of Tri-County Bank shall be repaid over fifteen (15) years at the rate of 4.25% per annum with annual payments from their crop sale proceeds over the 15 year term of this claim beginning with their crop proceeds in the 2020 crop season.

**Class 6C:** The remainder of the claim of Tri-County Bank shall be treated as an unsecured claim and receive a pro-rata distribution with all other unsecured creditors pursuant to the terms of such unsecured creditors in Class 8 herein.

**Class No. 7:** Class 7 consists of Security Credit Union which has a lien on the Debtors' Legend enclosed trailer. Security Credit Union shall retain its lien and shall be paid in full with interest at the contract rate during the term of this Plan. The Security Credit Union claim shall be paid direct during the first year of this Plan if possible. If payment in full during the first year of the Plan after crop proceeds are received is not possible, the claim of Security Credit Union shall be paid in full over the term of this Plan at the contract rate with payments to be made annually after receipt of the crop proceeds. Upon payment in full of this debt, Security Credit Union shall release its lien on the Debtors' Legend enclosed trailer.

**Class No. 8:** Class 8 shall consist of the approved, General Unsecured Claims of the Debtors. The approved, General Unsecured Creditors shall be paid pro-rata, the remaining disposable income of the Debtors over the term of this Plan with a minimum of an amount equal to the value of their un-exempt assets.

**Class No. 9:** Class 9 shall consist of the Debtors, John E. Fogler and Shari L. Fogler, who shall retain their interest in the property of the Debtors in possession and shall be vested with the property

of the estate upon the confirmation of this Plan of Reorganization, free and clear of any interest of any creditor except secured creditors who shall retain their liens as stated herein.

### ARTICLE XVI. - PROJECTED INCOME AND EXPENSE SUMMARY

| | |
|---|---:|
| Off-farm Net Income | $46,920.00 |
| Farm Income | |
|     Wheat - 387 ac x 60 bu/ac x $5.12/bu = | 118,886.40 |
|     Straw - 10,000 bales x $2.00 each = | 20,000.00 |
|     Soybeans - 755 ac x 35 bu/ac x $8.22 = | 217,213.50 |
|     Government Farm Program Payments = | 50,000.00 |
| **TOTAL INCOME** | **$453,019.90** |
| Farm Expenses: | |
|     Seed | 55,771.00 |
|     Fertilizer | 45,097.25 |
|     Crop Chemicals | 16,326.25 |
|     Crop Insurance | 7,662.50 |
|     Fuel & Oil | 20,225.00 |
|     Repairs | 15,000.00 |
|     Insurance | 10,529.00 |
|     Land Rent | 42,587.00 |
|     Hired Labor | 10,000.00 |
|     Combining & Drying | 10,466.00 |
|     Equipment & Utilities | 5,000.00 |
|     Trucking | 9,929.00 |
| Total Estimated Operating Expenses | $ 248,593.00 |
| Living Expenses: | 59,616.00 |
| **TOTAL EXPENSES** | **$ 308,209.00** |
| **TOTAL AVAILABLE:** ($453,020.00 - 308,209.00) = | **$144,811.00** |

### ARTICLE XVII. - PROJECTED PAYMENTS in 1st Plan Year

| | |
|---|---:|
| Trustee at 5.0% | 7,240.00 |
| Attorney fee | 12,000.00 |
| IRS Priority Claim | 5,300.00 |
| State of Mich. | 1,738.00 |
| Farm Service Agency (FSA) | 16,500.00 |
| Tri-County Bank 2nd Mortgage (6A) (paid direct) | 3,736.00 |
| Tri-County Bank - Equipment &Vehicles claim (6B) | 15,160.00 |
| Flagstar Bank - (paid direct) | 14,030.00 |
| Security Credit Union (paid direct) | 1,200.00 |
| Financial Pacific Leasing, Inc. - (paid direct) | 16,140.00 |
| Unsecured (approx.) | 51,767.00 |

**PROJECTED PAYMENTS in the 2nd Plan Year**

| | |
|---|---:|
| Trustee at 5.0% | 7,240.00 |
| IRS Priority Claim | 5,300.00 |
| Farm Service Agency (FSA)(approx) | 16,500.00 |
| Tri-County Bank (approx.) 2nd Mortgage (6A) | 3,736.00 |
| Tri-County Bank - Equipment &Vehicles claim (6B) | 15,160.00 |
| Flagstar Bank - (paid direct) | 14,030.00 |
| Financial Pacific Leasing, Inc. - (paid direct) | 16,140.00 |
| Unsecured (approx.) | 66,705.00 |

**PROJECTED PAYMENTS in the 3rd Plan Year**

| | |
|---|---:|
| Trustee at 5.0% | 7,240.00 |
| IRS Priority Claim | 5,300.00 |
| Farm Service Agency (FSA)(approx) | 16,500.00 |
| Tri-County Bank (approx.) 2nd Mortgage (6A) | 3,736.00 |
| Tri-County Bank - Equipment & Vehicle claim (6B) | 15,160.00 |
| Flagstar Bank - (paid direct) | 14,030.00 |
| Financial Pacific Leasing, Inc. - (paid direct) | 16,140.00 |
| Unsecured (approx.) | 66,705.00 |

Submitted by:

Dated: May 15, 2020

/s/John E. Fogler
John E. Fogler, Debtor in Possession

/s/Shari L. Fogler
Shari L. Fogler, Debtor in Possession

/s/Martin W. Hable
Martin W. Hable (P-27634)
Hable & Frew, PLC
Attorneys for Debtors
301 W. Genesee St., Ste. 101
Lapeer, MI 48446
(810) 667-7123
hablelaw@yahoo.com